Millard L. Midonick, S.
In this proceeding to withdraw funds deposited with the Finance Administrator of the City of New York for the benefit of unknown distributees, a hearing was held and testimony and other proof was submitted on the issue of the status of an alleged daughter of decedent.
In 1946 while decedent was domiciled in Puerto Rico he became the father of petitioner, Elizabeth Ortiz Cabrera, by one concededly not his wife. There was testimony in this case by decedent’s brother that he was present at petitioner’s christening in 1946 and that the decedent was there and spoke of and referred to petitioner as his child and daughter. In addition there was offered in evidence the baptismal certificate and birth certificate naming the child and the parents of the child. (Cf. Matter of Slater, 195 Misc 713.) While it is noted that these documents were not signed by decedent (cf. George v Galani, 218 App Div 840; Matter of King, 31 AD2d 758; Matter of Fay, NYLJ, June 17, 1975, p 17, col 2), the evidence shows that the parents were present at the baptism and that decedent had acknowledged the petitioner as his child at the baptismal ceremony in Puerto Rico.
Decedent left Puerto Rico in 1946 after that child’s birth and came to New York where he remained domiciled until his death in 1971. In 1948 the mother and child also came to New York and continued to reside with decedent until his death. The decedent and the petitioner’s mother never married.
Decedent was the father of another child, Nancy, who was born in New York in 1957. The only asset of decedent’s estate consists of a sum of money which was deposited with the *792 Finance Administrator pursuant to a decree of this court dated July 1, 1975.
In New York an illegitimate child has no right to inherit property from his father unless a formal order of filiation declaring paternity has been issued by a court of competent jurisdiction. (EPTL 4-1.2; Matter of Lalli, 38 NY2d 77.) It is conceded that no order of filiation exists for the child Nancy and therefore she is not a distributee of decedent. (Matter of Lalli, supra.) The petitioner contends that, by virtue of the statutes and decisions of the jurisdiction of Puerto Rico, she is required to be recognized as legitimate by the courts of New York.
It is the law of the place of a child’s birth that determines his legitimacy. (Olmsted v Olmsted, 190 NY 458; Matter of Sherman, 76 Misc 2d 551; Matter of Fay, NYLJ, June 17, 1975, p 17, col 2, supra.) The courts in New York will also apply the law of the jurisdiction where the child and his father were domiciled when the "act” of legitimation occurred, whether by marriage lawful in that jurisdiction (Miller v Miller, 91 NY 315) or by statute of that jurisdiction (Matter of Ortiz, 60 Misc 2d 756; Perez v Gardner, 277 F Supp 985).
If the status of legitimacy or the manner of acquiring it in the foreign jurisdiction violates the public policy of this State, the courts of New York, however, will not recognize the child as legitimate entitled to inherit in this jurisdiction. (Olmstead v Olmstead, supra; Matter of Ortiz, supra.)
In Matter of Vincent (189 Misc 489) the court would not recognize a child as legitimate where the statute of the foreign jurisdiction merely conferred on the child the right to inherit but did not make the child legitimate for all purposes. As Surrogate Sobel pointed out in Matter of Ortiz, supra, p 763): "That decision is based on the principle that only the forum States’ laws govern inheritance and that recognition will only be given to the laws of a foreign state which confer the status of legitimacy, not merely the right to inherit if legitimacy is the requirement of the forum’s statutes.”
The petitioner herein relies upon a 1952 statute of Puerto Rico and a decision of the Supreme Court of Puerto Rico to establish her status. The statute (Laws of Puerto Rico, tit 31, § 441) provides that: "All children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children.”
In Ocasio v Diaz (88 PRR 658) the Supreme Court of Puerto *793 Rico interpreted that statute and held that under it all children have full equality of rights with regard to their parents in all respects, not just the right to inherit. That court also ruled that the statute is retroactive. >
In this case it is clear that petitioner is the child of decedent and has been acknowledged by decedent. If her status is governed by the law of Puerto Rico she would be entitled to inherit in this jurisdiction since the Puerto Rican statute confers upon all children the same status and rights as legitimates. The only problem is that petitioner and decedent were domiciled in New York at the time this statute was enacted in Puerto Rico in 1952.
This statute and the question of domicile were considered in Perez v Gardner (277 F Supp 985, supra). In that case plaintiff, the mother of four children admittedly fathered by decedent Flores, who died domiciled in New York in 1962, sought review of a decision denying her application for Social Security benefits. Three of the children were born in Puerto Rico (in 1946, 1948 and 1949 respectively) and the fourth in Wisconsin. Decedent came to the United States in the early 1950’s and the children came here in 1955. The issue was whether the children were considered legitimate and were entitled to inherit in New York, the State in which the decedent insured was domiciled at the time of his death. The Federal court noted that the issue was complicated by the fact that the three eldest children were Puerto Rican domiciliaries whereas the father was then a Wisconsin domiciliary at the time of the Puerto Rican Legitimacy Statutory Act of 1952. The Federal court held, however, that the consistent line of authority in New York (p 992): "dictates supplementation on the status of filiation, by reference to the law of the domicile of the child either at the time of his legitimation or as of his birth.” Perez v Gardner (supra, p 992), determined that the three children born in Puerto Rico were considered legitimate in New York.
The instant case goes one step further than Perez since here both the petitioner and father were domiciled in New York at the date of the Puerto Rican legislation. If this court were to apply the law of Puerto Rico as it actually existed in 1946, the date of petitioner’s birth, (disregarding the retroactive statute of 1952), petitioner would lack status to inherit in New York. (Robles v Folsom, 239 F2d 562.) If the court were to refuse to apply the present law of Puerto Rico because the parties were not domiciled there at its enactment, the petitioner, although *794 now considered legitimate in the land of her birth, would lack standing to inherit in this jurisdiction.
The proper result of this case and one which does no harm to this State’s public policy would be to apply the law of the place of the child’s birth as it presently exists, keeping in mind that the 1952 statute has been declared retroactive by that jurisdiction’s highest court. Inasmuch as the 1952 statute is retroactive, this court is doing no more than applying the law of the place of the child’s birth as it would be applied in that jurisdiction. To disinherit this child would be, in the words of Chief Judge Clark, to force "Anglo-Saxon moral patterns on a family having its origin in the more tolerant atmosphere of Puerto Rico and the civil law it follows.” (Robles v Folsom, 239 F2d 562, 565, supra, dissenting opn.) The court is of the opinion that petitioner is legitimate under the laws of Puerto Rico and is entitled to inherit as a distributee of her father in this State. (Matter of Slater, 195 Misc 713, supra.)
Submit decree on notice authorizing withdrawal of funds on deposit with the Finance Administrator of the City of New York.